Good morning, your honors. Mike Bardisch on behalf of the appellate Luis Edwards. I would like to begin by saying that you have to let defense counsels do their jobs at a sentencing hearing. There are three issues before you. The first one, I think the most important one that I want to address, is the district court's decision to deny acceptance of responsibility to the appellant in this case, Mr. Edwards. And that decision, when you look at the case, was essentially based upon a legal challenge that the trial defense counsel made to whether or not the evidence was sufficient to warrant a leadership enhancement. It wasn't really a factual dispute. The facts of the case, for the most part, what was presented before the court, was pretty much uncontested. What this essential argument that was presented at this hearing was whether or not those facts, those uncontested facts, are sufficient evidence to warrant the four-level leadership enhancement. That's what this whole thing was about. It was a manager-organizer enhancement. It was a four-level enhancement that was implied. Well, that's where it gets complicated, and I'll explain. Versus the trial defense counsel argued, based on the evidence, that no enhancement should apply. That was what the argument was at the district court level. In going through the research and in preparing for the appellate argument, that argument is, we've abandoned that argument. The argument now is that a three-level should apply. Because you're arguing for no enhancement or a lesser enhancement than the organizer-leader, you're not accepting responsibility for your crimes, and therefore you don't get... That's correct. That's what you say the issue arises from. That is what the issue arises from. And the district court looked at the facts and determined that that argument posed was frivolous, did it not, because of looking at the phone communications and other things, and Mr. Edwards' involvement, the court decided that given the overwhelming nature of that evidence, that this enhancement was frivolous. He did make that argument, but I would like to point out that you need to look at the progression of how we got to where we were. Following up on that, your basic argument is that although the law is very lenient in terms of the decision of district judges, they have a very strong discretion to accept or deny the three levels for acceptance and responsibility. You're saying they may not do so on the basis of a legal question as to how to characterize an enhancement or no enhancement. That's a legal issue. It's not a denial of any fact. That's what you're saying. He's not denying a fact, correct. Essentially, legal challenges alone... Is there any case law about this? You know, I don't know how often it happens that acceptance of responsibility is denied, not because the defendant is denying the factual basis for the crime and the guilty plea, but because there's an argument between...the court doesn't agree with a legal argument that counsel is making. Do you find any law about that? I was not able to find any sort of Sixth Circuit law that is on that issue. Any law of any order? Well, in preparing for the oral arguments last night, I found, going through other things, there were cases in the Seventh Circuit, but I'm not confident enough that I haven't shepherdized them. But I'll give you the point. One is, the district court should not deny the reduction for acceptance of responsibility simply because the defendant's attorney challenges the legal conclusions drawn from the facts that the defendant admits and are uncontested. And the case that I found, I found this last night at 1130, was U.S. v. Purchase. It's out of the Purchase, P-U-R-C-H-E-S-S. It's out of the Seventh Circuit, 107 F-3-D, 1261 at 1267, Seventh Circuit. 107 F-3rd? F-3rd, 1261 at 1267. And it's the Seventh Circuit, 1997. So you would say that case, although there's nothing in the Sixth Circuit you could find, that case is on point, you're saying? I want to caveat that by saying this was something that, in preparing for this argument, I looked at 1130 at night, so I'm just letting you know this is the... I asked my law clerks to look it up, and they couldn't find any law one way or another about this. On that, what's interesting about that is all the issues where I was looking at all these... In the government's brief, they cited all these cases where the four-level enhancement was upheld for various issues. Well, in each one of those cases, that means that at the circuit court level, at the district court level, the person must have objected to that enhancement of that four-level leadership role. And I went and looked back at all those cases, and not one of those cases did the person lose acceptance of responsibility. I think in this case, when you look at what happened, kind of the most instructive thing for me is kind of how it all played out. And it's the probation officer... If you look at the defendant's interview with the probation officer, and look at what he said in that interview, they really did not... And when the probation officer recommended acceptance of responsibility, to which the government did not object at that time, the defendant really did not, in that interview, take the position. He ultimately took it sentencing. He did, in fact, object to the leadership enhancement, but there was no clue in the interview with the probation officer that he did not, as a fundamental matter, accept responsibility. Then you get to the sentencing, and there's an evidentiary hearing on which the government presents all of its evidence supporting the enhancement. And it's at that point that the district court, and possibly even, you know, defense counsel would have had all that evidence, presumably, prior to the plea through discovery. But it's at that point that the extent to which the defendant was an organizer and leader, and the strength of the evidence of his being the central point of contact for all the phone messages, became apparent to the district court, correct? I would say, I think that's accurate as to how he brought that up, but I would like to point out... But at that point, I mean, the defendant always knows that conduct during sentencing can, in fact, call into question whether he has, in fact, continued to accept responsibility, correct? It can. And a deceased defense lawyer knows that the assertion of certain positions carries with it the risk of taking the client down the denial of acceptance of responsibility road, right? I have a... I think I don't agree with you on that, to some extent. I would like to elaborate, if I may. Okay, please. When you are in the district court, and we'll ask you to look at the transcript. One of the things that happens, and I found what was interesting about the transcript at the end, is Judge Maloney is trying to say, basically, your counsel, your client's position now is that this was a one-time thing, that he wasn't, you know, this was a one-time occasion. And that's near the end of the transcript. It's at record 36, page 207. He's talking about, so now your counsel, your position is your client was never, was just a one-time deal, and, you know, explain to me how this happened. Basically, he answers a compound question. It's your client's position that this was a one-time occasion, he was never involved in anything. How do you explain how he got to be the communication hub for everything? Nowhere in the record, nowhere in the PSR does Mr. Edwards ever say this was a one-time thing. He never says that. But when you look at the end of the transcript, Judge Maloney goes on that. Well, certainly the import of what he was saying was I was not the one putting this transaction together. The argument that it was, I would caveat that. This is a, it's a legal argument. He is obliged, the facts are presented. No one contested the facts. There was no, you're saying what we were talking about before, that there was no denial of any factuals. Correct. That was the label under the guidelines to be put on that factual context that the lawyer was trying to convince the judge of in order to keep his sentence down, and with which the judge disagreed. And therefore didn't find that this conclusion was right. But that was, and he then was irritated at the lawyer and became irritated at the client as a result of what the lawyer said about what the label should be. That's what your argument is. I agree. He has, look, he has an obligation to zealously advocate a position. You started out this by saying that the point you want to make, and maybe you didn't say exactly that, is that defense lawyers must be allowed to do their job at sentencing. And so your real argument is that the, if we hold that the person gets denial of acceptance of responsibility in this instance for simply challenging the sufficiency of whatever that label is, that that has a chilling effect on lawyers who are trying to test every component of the sentencing thing. They have to run the risk of either advocating, being a zealous advocate, or risking their clients. Exactly. You let this stand. You let this result stand. It's a chilling effect on how I can do my job in the future. I mean, let's look at the situation. The original PSR has no leadership enhancement. None. The objection from the government doesn't ask for a four-level enhancement. It asks for a two-level enhancement. Because they don't believe that there's the number of cooperators reaches, the number of participants reaches five. And then the PSR author decides, all right, government, I disagree. Although I originally said there's no leadership enhancement. I know you want two. I'm giving you four. If I'm the defense counsel in that position and I don't stand up and say, hey, time out here. What's going on? I'm not doing my job. I mean, someone can come back on me and say, how couldn't you object to that? You risk an ineffective assistance of counsel. Exactly. It's a no-win situation. Well, Mr. Bartish, look, you know, the problem for the other side is if we don't uphold what the district court did here. I mean, district courts have to have discretion to determine acceptance of responsibility. They're in the business of imposing appropriate sentences under the circumstances. I mean, they certainly want to be mindful of the challenges that defense counsel face, but they can't be crafting a sentence in order to protect a defense attorney who might have gone a little too far in his zealous representation. So, I mean, you can say, well, this is really about the defense attorney's judgment. But if you make it about the defense attorney's judgment, then are we going to make it, I mean, are we going to say the defense attorney gets to exercise his discretion but the district court does not? I mean, it's really problematic. I would agree, but what you need to understand, if it's a relevant conduct argument, whereas the evidence clearly shows that an individual received all of these drugs, and he is making a factual statement, I did not receive any of those drugs. I think that's a different situation. For a guy who has pled guilty, essentially, I mean, the plea agreement in this case was usury. He didn't get any benefit from the plea agreement. His guideline range would have been the same regardless. These are not the proper criteria to be considering. It might be true, but it's not the proper criteria to apply. We're determining whether the district judge ultimately acted with his discretion in denying the, I mean, are we going to say that? We're going to say, I mean, you know, the defendant didn't get much benefit from the plea agreement. The defense attorney was just arguing, so he got out of bounds. I mean, it's just not a, I can't see us writing an opinion supported by that. I think you can write an opinion that suggests that the only basis for the objection was a legal argument. It was a legal argument that was made by the... It was not a legal dispute. I mean, at the end of the day, it was a factual dispute about what the evidence showed as to your client's role in the transaction. But didn't you say that the government is the entity that put forth this particular enhancement and your position was to advocate against that? Is that what you said, or did the judge put that forth? The position was that the PSR originally said no enhancement. The government objected and said we want a two-level enhancement. The PSR writer, in response to that objection, actually gave a four-level enhancement. And that enhancement was based, quite frankly, on the number of participants. And the government persisted then? I mean, did the government at that point, going forward, agree with the probation officer? They did, but they also hedged their argument because even at the hearing, they're talking about a three-level enhancement as well. They're like, well, I don't know if this is a three-level enhancement. It's at least a three-level enhancement. It could be a four. And our point being is how can it be frivolous when all these parties... Why wouldn't your better argument be that it was a close question and therefore the argument could not be deemed frivolous? You cut me off. And therefore... That's the argument I was going to right as you cut me off. I swear it was. All right. All right. You're from the government. That has worked the government over for a while. May it please the Court. Jennifer McManus on behalf of the United States. The district court did not commit clear error at sentencing, either when it assessed the four-level enhancement or when it denied acceptance of responsibility. And I think there are two aspects of the district court's rulings on the guideline issues that are important and that the court already has touched on. One was that the defense position at sentencing was that no rule enhancement was warranted. Not that a three-level enhancement was warranted versus a four-level. They were arguing that there shouldn't be an enhancement. And that's what the debate was about. It was kind of going back and forth. The probation officer first said two levels and then the government said, you said, what, four levels or you didn't say anything. But anyway, that's what the argument was about. Let me ask you this question, though. This is my bottom line question here. Normally we say that the question of acceptance of responsibility is within the very strong discretion of the district court. We've said that many, many times. The courts are all around. But he says there should be a narrow exception to that when, and he cites for this what Casey found last night in the Seventh Circuit, but it does make sense to me. And that is when the only question is one of law, how you label the facts, whether it's an organizer or whatever it may be, the enhancement here. And there's a difference of opinion between counsel and the judge, which might include the government, too. They've got to, you know, you may have several different opinions about these enhancements. But there is a difference of opinion about what the facts amount to, how they should be labeled. And the court disagrees with counsel for the defendant on that question. In that narrow circumstance of making that conclusion, why should that, our broad discretion principle, apply? A couple of answers to that. First, I'm not familiar with that case, unfortunately, on the Seventh Circuit. But as far as the principle goes, first, here, the court has recognized, specifically in the context of the leader-organizer enhancement, that if a defendant who admits to an act is not entitled to acceptance of responsibility when the admission does not include the defendant's role in the conspiracy, that's the Ogarton case that the defense cites in its brief, and it cites the United States v. Nelson. Did he ever deny any fact whatsoever about it or just how it should be labeled? There is a factual dispute. And at a minimum, there is a dispute as to the factual inferences. It's a question of a mixed fact and law or a question of fact, raw fact. And you can say there is a factual dispute, but Judge Merritt's question was did he, the defendant, ever deny any fact? And I think that's different than whether or not there was a factual dispute. Did he deny any of those facts that ultimately led to this label? Maybe it's a question of how to phrase it, but the district court certainly was of the view that the defendant himself gave a version of the facts of the offense, as set forth in paragraphs 23 and 24 of the pre-sentence report, that the district court believed was inconsistent or incompatible with the evidence presented at sentencing. Notwithstanding that, the initial pre-sentence report did not provide for an enhancement, did it? That's correct. You mean counsel should be disallowed from arguing about how to characterize the facts here, whether he's an organizer and a leader or something else? Surely counsel can argue to a court and should be encouraged to argue, not discouraged on behalf of his client, just like the government should be permitted to argue for the people, one side or the other. And you shouldn't be either harmed or helped because you make some argument that the court doesn't agree with. There's no question that defense counsel has difficult judgment calls to make in advocating at sentencing, but the district court here, the judge was very careful. The district court judge was not cavalier in this case about denying acceptance of responsibility. He made the remark that this was one of the rare cases in all of his time on the federal bench in which he did this. And in at least two places, he was very careful to inquire from counsel what the basis for the objection was. And so what he says, the judge says on page 204 of the record, part of the sentencing transcript, Mr. Springstead, the defense counsel, I appreciate the fact that you're making good faith representations based on what your client is telling you, but this is a frivolous objection. And I'm not going to give you a... I was not in the courtroom at the time. But isn't the fact of the way this whole thing developed and the pre-sentence report is originally submitted and where we end up, that those were so different, doesn't that make this, you know, obviously sort of a close question? And in an adversary system as ours is, where there can be such a huge penalty for advocacy on behalf of one's client, doesn't that strike you as sort of fundamentally inconsistent with a lawyer's role? When it comes to acceptance of responsibility, it is always a defense burden to show that the defendant has clearly accepted responsibility. So... And how does the lawyer clearly do that by standing mute and saying whatever it is that the government says he did, that's what he did? Because if he stands up and argues against that, there is a risk here based on that advocacy. What did the... How much did the client's exposure increase once the four levels came on? There were four levels for leadership in play and then there was a safety valve as well. So that's a six-level swing. And talk to me in terms of months in jail, it went from what to what? I don't actually have that in front of me, but it was a significant difference. A significant difference. No question that there's a significant difference. A six-level swing. The lawyer would have been ineffective if he hadn't tried to argue that his client shouldn't get all that extra time, wouldn't he? I'll answer both questions. I do not think the lawyer would be ineffective if he took a different position. Here, there's no question that... What position would have been appropriate for him to take? And I know this may be a little unfair to you, but what position? In light of your argument, what position could the lawyer or should the lawyer have taken? In light of the fact that the defendant admitted at his plea hearing that he directed the activities of other people. And that is enough for a rule enhancement. So you say... Under the clear precedent of this... You say that the probation officers in preparing the PSR initially, they erred and that they did not include an enhancement. Yes. They erred and then... It's that issue. And the government then advocated for an increased rule. That's correct. Two levels. That was a mistake. Okay. So initially, the pre-sims report... It looked like everybody's mistake. Right. The probation officer didn't see, based on the facts, that there should be an increase. You looked at it and said, probation officer, you got it wrong. There should be at least two levels. And then the judge goes up to four, which, as you acknowledge, is a significant increase. Counsel, who is the advocate for the defendant, steps in to argue. And because he steps in to argue this, it's frivolous. And now the client is at peril. What can possibly be appropriate about that? I know that there's a highly differential standard, but there is this thing called justice. Absolutely. However, there is a lot of difference given to district courts on both issues, whether a leader enhancement is warranted at all and certainly whether acceptance should be granted. And that's because the leadership enhancement issue is a highly fact-bound determination. So we try to say, is there a factual dispute or is there a legal dispute? But really, it's all tied in together. And so what the district court judge did here a couple of times at page 204, at page 212, he tried to zero in on what the nature of the objection was. Having heard all of this telephone evidence indicating that Mr. Edwards had 300 contacts in a five-day period directing the transportation interstate of $100,000 worth of cocaine, this was a major large-scale operation. And the district court said, you are asking me to believe that you were doing this as a favor for a friend and you didn't even expect to get any money out of this. That's set forth at paragraphs 23 and 24 of the pre-sentence report. Mr. Edwards said, I was doing this as a favor for a friend, and defense counsel portrayed this as, you know, this was akin to the role of a mule. This is the lawyer talking? No, the client, Mr. Edwards, told the pre-sentence investigator, I was doing this because a friend asked me to help him out. And originally I was going to go, but it was my birthday, so I didn't even expect to get any money from this. But, you know, I was helping out a friend. I think this struck the district court judge as the classic kind of minimizing responsibility for criminal conduct that is all too familiar. Can you tell us exactly, I don't have it with me, can you tell us exactly what was in the plea colloquy that related to Mr. Edwards' role? I mean, we can look at it later if you don't know. I have it, it's on page 149 to 153 of the plea transcript. The part that we have focused on is on page 152 to 153, where the district court is attempting to confirm whether there is any directing of activity. And so the court says on page 152 at line 8, okay, but you directed the people to go pick up the drugs in Ohio. And the defendant says, yes, Gilbert, another guy, went to pick up. And the court says, but they knew where to go because you told them, correct? The defendant says, yes, sir, they gave me the numbers to call him. There's a little bit of a language barrier, I think, when the defendant is expressing what his role was exactly. But I think it's clear from the exchange as a whole that he was directing the activities, and it certainly was clear based on all the telephone evidence presented. He said to the court. Yes, that's what he said to the court. Can I ask, too, what was the government's basis for originally arguing for two points as opposed to four? You know, the basis. Or do you know? I do know the basis was the same. It was all of this directing of activities. But a two-level enhancement only applies if there are fewer than five participants. And the AUSA simply missed the fact in counting up the players that there were really at least five participants. You don't get two levels just because it's a little bit less than what a supervisor or manager would be for three levels. Didn't it have anything to do with Mr. Edwards' role and it just had to do with how many people? Absolutely. Does the record tell us that? I mean, I think that's what Mr. Bartish said, too, but how do we know that from the record? I am not certain if it's in the record, but it's probably at the sentence. I don't know, actually, if it's in the sentencing transcript. But it is clear, and I think it's undisputed, that there were five participants. And under the guidelines, if you have five participants, you either get three or you get four. You only get two if there's fewer. It's that same connection. Is there anything that the counsel or the defendant said to the court in the sentencing hearing that was false? I do not think there's anything that counsel said that was false, as a matter of fact. I do think that the district court disagreed with the characterization of the role of the defendant as a mule, as akin to a mule, recognizing that this was a significant, highly organized transaction with $100,000 worth of drugs being moved between the states. I think it affronted the district court judge's sensibility that he was being asked to believe that this person was in a traditional role of a courier or a mule who was engaged really on a one-time basis. In the colloquy in court, did the counsel say he, this fellow, is only like a courier? I believe he used the word mule. And I'm not sure if he used the word. Well, that puts him more in a role of a drug courier or a mule in that case. Or a mule in that case, on page 166. And the reason that he ultimately did end up doing it was first of all, it was his birthday, and so on. And so it makes it seem as if he's actually picking them up when it's in fact his friend from Lansing that's going to do it. I mean, it's Mr. Edwards is the middle man directing his friend to go pick up the drugs. I don't think that's actually accurate.  I guess that was the whole. Yes, because originally he was. This is statements of counsel prior to the presentation of evidence actually beginning. Counsel was saying that he was in the role of a courier, and then the evidence came on as to what happened. Is that right? That's correct. And I don't think the advocacy really changed after the evidence was presented. But the judge would have to have been, you said, affronted. Affronted then by counsel's characterization of his role as being like a courier, and therefore, since the court didn't think that was an accurate statement or characterization, denied acceptance responsibility for that.  I mean, he can't just come along and say, because you're arguing in favor of no enhancement or a four-level enhancement, I'm going to deny responsibility. There's got to be some kind of fault on the part of the client or the lawyer who's made a misstatement to the court that has, as you say, affronted the court enough to deny a very substantial reduction. Is that right? The district court, again. And so I'm going to deny responsibility. That's not a valid basis, is it? An aggravating rule enhancement is a very fact-bound determination. The district court, on at least two occasions, was careful to explain on page 212 is one of them, 204 is another, to explain that the advocacy was in good faith, but that based on the information that counsel received from his client as to what the facts were concerning the nature of his role, I'm going to deny him an acceptance of responsibility. Right. I mean, the district court goes out of his way several times to assure counsel that he knows he was acting in good faith based on his client's representations to him. I mean, the district court's not faulting the lawyer for his advocacy in any way, is he? No, and he says, I'm going to keep, no, I will, I have all but decided. And I really don't, I don't understand, Mr. Bartish will have an opportunity to tell us, but I didn't understand him to contend otherwise. Correct. I mean, this was really, the district court said several times, you know, this is based on the set of facts that you've been given and that have been given to the pre-sentence report writer. I do not believe that the defendant has met his burden to show that he has clearly accepted responsibility for his role. If he wants to write a question. I don't have any more. All right, Mr. Bartish. I have three points that I'll raise. Your question was about the difference in the guidelines. Original guidelines were 70 to 87. He was eligible for a safety valve. After the government's objection, the guidelines went up to 135 to 168. And he's not eligible for the safety valve. And then after he lost acceptance, he went to 188 to 235. So that's... How many extra months did he get that he wouldn't have otherwise gotten approximately for a loss of acceptance responsibility? His guidelines went from 135 to 168 to 188 to 235. 118 extra months. Correct. 118 extra months. Correct. Well, that's from where they were originally to where they ended up. But one point I want to raise. Nowhere in the transcript were there any facts that were presented by the defendant or the defense counsel. None. We didn't put witnesses up to say this is what happened. The only thing that happened at that sentencing argument was the government put a witness on the stand, presented facts. And the defense counsel argued that those facts that the government presented did not warrant a leadership enhancement. That's what happened. The court can say all it's want about, well, these are the facts that your client is giving you, Mr. Springs said. He talks about, I have no doubt that you're arguing the facts that your client gave to you. There's no facts that his client gave to Mr. Springs said. None. Well, Mr. Springs did say there were. I mean, he was not referring to what happened at the hearing. He was referring, the court asked him, I think this is before the presentation of evidence. He asked him what his good faith basis was for the representation he made. Did he have evidence of that? And he said, well, that's what my client told me. So, I mean, that's, that's. I don't believe that that's for the, that is for the, that was talking about stuff that was unrelated, relevant conduct, that part. I'm not sure that's correct, but in any event, we can look back at that. I would ask you to look back at that. I think it comes, I think it comes at the point. We're arguing, we are arguing that the facts that are presented as uncontested don't say what the government says they say. I have a question on that when you finish answering. I think I'm done with my, I think we're, I'm, I'll go back. The only thing I can see right now that could be debatable from oral argument is that the lawyer said my client's role, presumably based on what his client had told him, my client's role was as a mule or a courier, which is partly factual and partly perhaps mixed, but that is, as I see it, the only basis on which you could deny, that you could say that the client is falsifying something, right? My question to you is how do you deal with that? It's in the argument. He is, Mr. Springstead is saying the facts as presented suggest this is more of a mule courier argument. Facts presented by the government. Correct. That's what you're saying. Correct. And to finish, if the key question again is frivolous, nobody, there wasn't really, everybody had a different position almost of what these, what the leadership enhancement was going to apply up until we got to the sentencing hearing. I mean, I just don't understand how this can be a frivolous argument when we have people disagreeing on the government side about what leadership enhancement should apply. Well, counsel, your light's on, but I will say that sometimes in these sentencing cases, the guidelines are like trying to determine how many angels can sit on top of a pen. Who knows? And how can that be frivolous? If I advance that it's five and you advance a hundred. Okay, anything else? All right. Thank you. We appreciate very much the argument that both of you have given. We'll consider the case carefully. Mr. Bartish, we appreciate very much the fact that you accepted appointment of this case under the Criminal Justice Act. You've represented Mr. Edwards zealously and well and we're very appreciative of your having accepted the appointment. Thanks. Goodbye. Good job. Both of you.